## C. A. ROBBINS, Appellee, v. EGBERT WEED, Appellant.

**WITNESSES:** Permissible Leading Question. A leading question
1 does not necessarily work reversible error.

**NEGLIGENCE:** Future Probability of Insanity, Etc. On the ques-
2 tion of damages by reason of an injury caused by negligence, ex-
pert testimony is admissible of the future probabilities of re-
sulting insanity or epilepsy.

**EVIDENCE:** Appearance of Health. An expert medical witness,
3 though he has never professionally treated the person in ques-
tion, but has had ample opportunity to observe, and has ob-
served him, may competently testify that such person appeared
at a certain time to be healthy.

**EVIDENCE:** Admissions of Blame. Admissions of a defendant to
4 the effect that he was to blame for an accident are admissible
when such admissions are inconsistent with his later version
of the transaction.

**APPEAL AND ERROR:** Curing Error. The specific withdrawal of
5 wholly incompetent testimony, with equally specific direction
to the jury to disregard it, cures the error, especially when
such testimony is supported by other competent testimony.

**APPEAL AND ERROR:** Estoppel to Allege Error. Error may not
6 be predicated on the submission of an issue, (a) when com-
plainant asked for such submission, and (b) when the argu-
ment, on appeal, is a clear departure from the exception in the
trial court.

**APPEAL AND ERROR:** Erroneous Submission of ''Last Clear
7 Chance.'' The submission of the doctrine of "last clear chance"
without a justifying record therefor is non-prejudicial when the
record would justify no other finding than that the injury was
caused *wholly* by the negligence of the defendant or *wholly* by
the negligence of the plaintiff.

*Appeal from Cedar Rapids Superior Court.*—C. B. ROBBINS,
Judge.

DECEMBER 14, 1918.

REHEARING DENIED SEPTEMBER 24, 1919.

SUIT for damages for personal injuries.  While driving an automobile on the streets of Cedar Rapids, the defendant ran over the plaintiff at a street crossing, whereby plaintiff was severely injured.  There was a verdict for the plaintiff, and judgment entered thereon.  The defendant appeals.— *Affirmed.*

*Randall & Harding,* and *Redmond & Stewart,* for appellant.

*Grimm, Wheeler, Elliott & Jay,* for appellee.

EVANS, J.—Thirty errors are specified as grounds of reversal.  Manifestly, we cannot consider them in detail, within the appropriate limits of an opinion.  The accident in question occurred at 2 P. M. on September 30th.  There was nothing apparent in the surrounding circumstances to interfere with visibility or audibility.  The plaintiff was crossing Eleventh Street at a regular crossing.  The defendant was driving north on the same street, and approaching such crossing.  There does not appear to have been any congestion or confusion of traffic.  The plaintiff had so crossed the street as to be within about eight feet of the farther curb.  The defendant was driving at a moderate rate of speed.  There is no apparent reason why the defendant could not have avoided the plaintiff, nor any why the plaintiff could not have avoided the defendant.  Nevertheless, the collision resulted which threw the plaintiff to the pavement, resulting in a fracture of the base of the skull.  The defendant's version of the immediate circumstances of the accident is that he undertook to pass behind the plaintiff,—that is, to the left,—and that he drew his vehicle to that side, but that the plaintiff suddenly stepped backward three or four steps, right in front of his car.  This version had the corroboration of one eyewitness.  The version offered on behalf of the plaintiff was that the defendant drove over him recklessly or negligently, without dis-

covery of danger by him, and that the defendant gave him
no warning of his approach, by horn or otherwise. The
plaintiff himself did not testify as to these immediate cir-
cumstances, his memory thereof having been completely
obliterated, as a result of the accident. He had no recol-
lection of any events transpiring within three days prior
to the accident, nor within many days thereafter. This
version offered on behalf of the plaintiff had the support of
the evidence of one eyewitness. Under this version, the
plaintiff did not step backward in front of the defendant's
automobile. The only material conflict in the evidence ap-
pears at this point.

I. Fourteen of the errors specified as grounds of re-
versal pertain to rulings on the admission of testimony.
Counsel for plaintiff asked the witness Miller the follow-
ing questions:

1. WITNESSES:          "Q. State whether you saw—state
permissible lead-
ing question.   whether or not the driver, so far as you
could see, attempted to turn to either side
for the purpose of avoiding Mr. Robbins, or did he come
straight on? A. It didn't look to me as though he did.
Q. State whether or not he came straight on towards Mr.
Robbins. A. I think he came straight on."

Each of the foregoing questions was objected to as
leading and suggestive, and the objection was overruled.
The answers are indicated. The ruling is now challenged.
The form of each question was within the limits of the dis-
cretion of the trial court. We see nothing either in the
ruling or in the answers elicited which would justify a re-
versal of the case. We reach the same conclusion as to
an alleged leading question put to the witness Dr. Krause.

II. Two medical witnesses testified on behalf of the
plaintiff. It appeared that the plaintiff had suffered a
fracture of the base of the skull; that he was unconscious

for many weeks; that a trephining opera-
**2. NEGLIGENCE: future probability of insanity, etc.** tion had been performed upon his skull; that he was irrational for a long time, while at the hospital, even after recovering apparent consciousness; that, since his comparative recovery and return from the hospital, he has had irrational intervals; that he was much changed in manner and temperament; and that he suffered a continual headache, and more or less loss of muscular control. Testimony was elicited from each of the medical witnesses, bearing upon the future probabilities as to resulting insanity or epilepsy. All this testimony was objected to on many grounds. The general purport of the objections and the present complaint is that it was mere speculation and guesswork on the part of the witnesses. The degree of probability was, of course, a mere opinion, based, however, upon a degree of expert knowledge. We think the testimony was all properly received, if for no other reason than as bearing upon the plaintiff's future recovery. At the time of the trial, he was still under great disability. Presumptively, this would continue for some length of time, and the plaintiff had the right to offer expert testimony on that subject.

Dr. Gonn had been the family physician of the plaintiff for some years, and had visited professionally in his home many times. At the time of the accident, he had the professional care of a member of the plain-
**3. EVIDENCE: appearance of health.** tiff's family, and had been making daily visits to his patient for some time previous to the accident. He had never, however, treated the plaintiff himself personally for any illness. He was asked as a witness to state his observation of the plaintiff's state of health. Answering such question, he characterized the plaintiff as a well, healthy man. This testimony was received over the objection of the defendant, and error is laid upon it now. The argument is that the

witness had never examined the plaintiff, and that no hypothetical question was put to him. The objection is hypercritical. The testimony simply amounted to saying that the doctor had observed nothing to the contrary. An opportunity for observation was shown. If the defendant's argument were to be heeded, a healthy man would usually find it impossible to prove his good health upon a past date, for want of a medical examination. Medical examinations are usually for the sick, and not for the healthy.

III.  Certain witnesses were examined on behalf of plaintiff who testified to certain statements made by the defendant to the effect that he himself was to blame for the accident. This line of testimony was objected to, and the adverse ruling is now presented for our consideration. The argument is that the alleged admission of the

4. EVIDENCE: admissions of blame.

defendant, if any, involved, at best, a mere opinion or conclusion on his own part, and that it involved even his conception of legal duty and liability. It is undoubtedly true that a man might have an erroneous view of the law of liability arising out of an accident, and that he might commit himself to an admission of liability which would not necessarily be binding upon him. But this fact would not necessarily render evidence of such admissions inadmissible in evidence. Taking the testimony as true, the statements ascribed to the defendant were inconsistent with his testimony as to the circumstances of the accident. If the accident occurred in the manner testified to by him, there was little occasion for his saying that he was to blame for it. The testimony was admissible for this reason.

IV.  Testimony was introduced by the plaintiff of alleged admissions made by the wife of the defendant. The substantial part of these admissions was that the defend-

ant was inexpert in the handling of his car,

**5. APPEAL AND ERROR: curing error.** and was driving it for the first time. The admission of this testimony was clearly improper. But it was specifically withdrawn by the court later, and the jury specifically instructed to disregard the same. We think this was a sufficient curing of the error. Appellant urges that the poison had done its work before the evidence was withdrawn. But the evidence, at its worst, was not of a very venomous nature. The only damaging purported fact was that this was the first time defendant had driven his car. There was other appropriate testimony that tended to support the same fact. If such was not the fact, the defendant could readily have cured all erroneous impressions pertaining thereto, by a direct statement in his own behalf. Some other rulings on the admission of testimony are complained of, but we find none of them more meritorious than the foregoing.

V. Fourteen specifications of error pertain to the instructions. The defendant presented eight requested instructions. The substance of several of these requested instructions was given by the court in its own

**6. APPEAL AND ERROR: estoppel to allege error.** instructions. The others were properly refused. The instructions given by the court were, in the main, the usual form of instructions given in this class of cases. We find some complaint in the argument of the giving of Instruction 5 by the court. This instruction submitted to the jury the question whether the defendant was negligent in failing to sound his horn. The complaint is that that issue should not have been submitted at all. This is a departure in the argument from the exceptions made to the instruction. These exceptions objected to the generality of the instruction and its lack of specification. The defendant presented a requested instruction on this subject, which was a request for the submission of such issue. The defendant cannot,

therefore, be permitted now to complain of the submission of the issue.

Instruction No. 6 submitted the question of last clear chance. We think the giving of this instruction was error, because there was nothing in the evidence which rendered the doctrine applicable. We reach the further conclusion, however, that the error could not have been prejudicial. The decisive fact question in the case was whether, as testified by the defendant, the plaintiff, while watching the approach of the defendant and the deflection of his vehicle to the left, stepped backward in front of him. If he did, there was no ground for charging negligence against the defendant. If he did not, there was no ground for charging negligence against the plaintiff. In order to find the defendant liable at all, the jury must have found that the plaintiff did not step backward in front of him. So finding, they must, accordingly, have found that his sole negligence caused the accident. On the other hand, if the plaintiff was guilty of contributory negligence, there was no cessation of his negligence up to the moment of the accident. The culmination of his negligence, if such, was the collision. The question of last clear chance was, therefore, immaterial and inapplicable. However, the giving of the instruction was clearly nonprejudicial to the defendant. It took nothing from his defense and added no weight to his load. The jury could not have found the defendant guilty of negligence without finding that it continued up to the moment of collision. Neither could it have found that the plaintiff was guilty of contributory negligence without finding that it continued up to the moment of collision. Nor could it have found that both parties were negligent. Under the evidence, the collision was clearly the result of the negligence of one, and not of both. The jury having

7. APPEAL AND ERROR: erroneous submission of "last clear chance."

solved the question of credibility in favor of the plaintiff, liability of the defendant was necessarily fixed.

Complaint is also made of certain instructions bearing on the measure of damages. These are in quite usual form. The verdict of the jury was for $5,000. In the light of the evidence, it was in no sense excessive. On the contrary, it might more reasonably be deemed inadequate. Clearly, the defendant has not suffered on the question of measure of damages.

Without dealing in further detail with the grounds urged for reversal, it is sufficient to say that our examination of the record, in the light of the argument, does not disclose prejudicial error. The judgment below is, therefore,—*Affirmed.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.