WILLIAM H. GRIFFITH, Executor, Appellant, v. ARNOLD & RASMUSSEN, Appellees.

**TRIAL:** Trial to Court—Dismissal of Prima-facie Case. The court, in trying an action, in lieu of a jury, may be fully justified in dismissing it on motion because of the inconclusive and unsatisfactory character of the evidence, *even though the plaintiff has technically made a prima-facie case for recovery.* So held in an action for money had and received. (See Book of Anno., Vol. I, Sec. 11508, Anno. 55 et seq.)

Headnote 1: 38 Cyc. p. 1560.

*Appeal from Audubon District Court.*—W. C. RATCLIFF, Judge.

DECEMBER 17, 1927.

Action at law for money had and received. Defense was in two divisions, the first being a general denial, and the second an affirmative defense. Upon motion of defendant at the close of plaintiff's evidence, the court dismissed the petition. The plaintiff has appealed.—*Affirmed.*

*Salinger, Reynolds & Meyers* and *Charles S. White,* for appellant.

*Tinley, Mitchell, Ross & Mitchell* and *L. L. Ryan,* for appellees.

EVANS, C. J.—The capacity of the plaintiff as executor and that of the defendant as a partnership are conceded. The plaintiff's purported cause of action is predicated upon three principal allegations:

(1) That, on March 3, 1921, the defendant-partnership procured the plaintiff's decedent, Myron C. Griffith, "to execute a note to E. H. Lougee for $14,500 secured by a mortgage on land of decedent."

(2) "That, on May 3, 1921, Lougee paid defendants $14,500.00 as the proceeds of said loan, with directions to pay the same to said Myron C. Griffith, after satisfying a mortgage of $9,292.25."

(3) "That defendant-partnership paid the mortgage, but has failed and refused to pay over to the said Myron C. Griffith, or to anyone legally authorized to receive same, the balance of said funds remitted by the mortgagee."

The prayer is for judgment for the balance due. The affirmative defense pleaded was that John H. Griffith alone, as son of Myron C. Griffith, conducted all the negotiations with the defendant, and that said John H. Griffith was one of the signers of the note, and collected and received from the defendant all the proceeds of said loan over and above the mortgage described in the petition. Plaintiff's reply to this affirmative defense was that

John H. Griffith had no authority from the said Myron C. Griffith to receive said funds, and that said Myron C. Griffith was of unsound mind, and incapable of either authorizing or ratifying any act of agency on the part of John H. Griffith. From pleadings and evidence and argument it appears that Myron C. Griffith was a widower, in advanced years, who had three sons, John, William H., and Charles. He had two farms, of 160 acres each, which were occupied respectively by John and William H. The decedent made his home with John. The mortgaged farm was the one occupied by the son John. A reader of the record will naturally surmise that the real intent of the litigation was to contest the authority of the son John to collect from the defendant the proceeds of the loan negotiated through the defendant. But the hearing before the trial court never reached that point. The contest before the trial court, which is said to have lasted for three days, might be likened to a fencing bout between skilled knights of the bar, each seeking to shift to the other the burden of proof. The evident strategy of the plaintiff was to make a prima-facie case upon his petition, and thereby to shift upon the defendant the burden of proving the affirmative defense. When the plaintiff rested, the defendant challenged the sufficiency of his evidence by motion, which was sustained by the court. The contention of the plaintiff, as appellant, is that he made a prima-facie case, and that for that reason alone, in the absence of contrary evidence, he was entitled to judgment. Argument on both sides has been predicated upon elementary principles, without citation of any precedents. The action was at law, and a jury was waived therein by stipulation. The judge who sustained the motion of the defendant was the trier of fact. If we were to hold that plaintiff's evidence made a prima-facie case, would it follow that he was necessarily entitled to a reversal? A prima-facie case is not necessarily a conclusive one before the jury. A plaintiff may make a prima-facie case in a technical sense which entitles him to go to the jury, and yet may lose his case before the jury for want of strength and substance in his evidence. And so in this case, even though the judge believed that the plaintiff had made a prima-facie case in a technical sense, which would have entitled him to go to the jury, yet, if he had believed also that the evidence was not convincing, and that the circumstances proved and the inferences which were sought therefrom were

weak and inconclusive, and would not justify a judgment for plaintiff on the merits, then he was under clear duty to dismiss the petition. Where the judge who hears the motion to dismiss is to be the jury which shall try the case upon its merits, we observe no reason why he should overrule a motion to dismiss, only to dismiss upon the merits, on his own motion. In such a case we think the appellant is under a greater burden here than to show that he made technically a prima-facie case, sufficient to go to the jury.

Turning to the question whether a prima-facie case was made, we may observe that the petition predicated the title of the decedent to the money had and received by the defendant, upon the fact that it was the *proceeds of a note* which the defendant had procured the decedent to sign. The note which the plaintiff introduced in evidence as an exhibit was one signed by the three sons of the decedent and their wives, respectively. The purported ''mark'' of the decedent appeared upon the same note. Two names were affixed to the note, as purported witnesses to such ''mark.'' Neither of these witnesses was called. Nor was the plaintiff able to prove that the decedent had in fact affixed his ''mark'' thereto. The mortgage which the decedent had acknowledged, and which was given to secure said note, became a persuasive circumstance tending to show that the decedent recognized himself as a party to the note. But even so, he was only one signer out of many, and was no more entitled to claim ownership of the proceeds of the note than was any other signer. The fact that the note was secured by a mortgage upon his land had its value as a circumstance, but it was competent for him to give a mortgage to secure the debt of another.

In so far, therefore, as he predicated his title to the money upon the fact that it was procured upon his note, his proof failed. Moreover, the note put in evidence did not conform to the note pleaded in the petition.

Another allegation of the petition, directed to the same end, was that Lougee remitted the proceeds of the loan to the defendant-partnership, with instructions to pay the proceeds to Myron C. Griffith. If the letter of remittance had contained such directions, it would tend to prove the title of the funds in the decedent. But the letter of remittance put in evidence by the plaintiff contains no such direction. It does direct that the

existing mortgage be paid, to the amount of over $9,000. It gives no direction as to the rest of the proceeds. The plaintiff put in evidence an answer filed by the defendant to the original petition, on the theory that it contained an admission by the defendant that it had received these proceeds as the property of the decedent. This item of evidence was a qualified admission of certain allegations of the original petition. This original petition had been supplanted by a substitute petition, and only the latter appears in this record. The real purport of the answer which was put in evidence could only be determined in the light of the petition, which was not put in evidence. Moreover, the admission thus put in evidence was expressly qualified to the effect that the proceeds received by the defendant were the proceeds of a note signed by others than the decedent.

Another alleged admission was put in evidence. It consisted of a part of the testimony given by defendant Rasmussen as a witness in another proceeding wherein he testified on this same subject. The plaintiff put on a witness who heard the testimony of Rasmussen, and who testified to an isolated statement therein. His cross-examination developed the whole testimony of Rasmussen on that subject. The substance of this was that the proceeds coming into the hands of the defendant-partnership were those of the note signed by the three sons and their wives.

Without, therefore, wrestling with the question whether the circumstances, though inconclusive, were technically sufficient to entitle the plaintiff to go to the jury, it is plain that the weak and unsatisfactory character of the evidence presented a very faint appeal to the trial judge for judgment on the merits.

The judgment is, accordingly, affirmed.—*Affirmed.*

STEVENS, FAVILLE, KINDIG, and WAGNER, JJ., concur.