**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2519
_____

PERRY BEENEY; WENDY BEENEY; NATHAN BENEFIELD; TREVOR COLE;
ROBERT COLLINGWOOD; GARY DUTKOWSKI; BILLEY E. ROWLES, JR.;
DARELL UPSHAW; JOHN BUCALO; JEFF VANCE; DANIEL CHILDS; SCOTT
COOK, on behalf of themselves and all others similarly situated,
                                                          Appellants

v.

FCA US LLC; STELLANTIS N.V.
_____

On Appeal from the United States District Court
for the District of Delaware
(District Court No. 1:22-cv-00518)
Circuit Judge:  Honorable Todd M. Hughes[*]
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on May 20, 2025
_____

Before:  PHIPPS, CHUNG, and ROTH, <u>Circuit Judges</u>

(Filed: September 5, 2025)

---

[*]      Honorable Todd M. Hughes, Circuit Judge of the United States Court of Appeals
for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(b).

---

OPINION[**]

---

CHUNG, Circuit Judge.

Plaintiff-Appellants (together, "Plaintiffs") sued FCA US LLC, a car manufacturer, alleging it violated eleven states' consumer-protection statutes and common law doctrines of unjust enrichment and money had and received. Their claims were premised on FCA's practice of profiting from the "destination charges" that it levies on dealers and that dealers allegedly passed on to Plaintiffs when Plaintiffs purchased or leased FCA's vehicles. Because Plaintiffs did not plausibly allege that FCA engaged in deceptive or unfair conduct, we will affirm as a proper exercise of discretion the District Court's denial of the Plaintiff-Appellants' motion to file a Second Amended Complaint.

I.    BACKGROUND[1]

When purchasing or leasing a new car from a dealer, consumers look to the car's window sticker to determine its price and specifications. Window stickers list, among other things, the manufacturer's suggested retail price ("MSRP") and the destination charge. The destination charge (also known as a "vehicle-delivery surcharge") reflects the cost incurred by the manufacturer to ship the assembled vehicle to a dealership.

---

[**]    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1]    Because we write for the parties, we recite only the facts pertinent to our decision. The facts herein are taken from the proposed Second Amended Complaint (and to a lesser extent, the First Amended Complaint) and deemed to be true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

2

Studies have shown that consumers tend to primarily consider the MSRP, not additional fees like the destination charge, when they look to lease or purchase a car.

Plaintiffs purchased or leased new vehicles manufactured by Defendant-Appellee FCA,[2] maker of brands like Fiat, Chrysler, Jeep, Dodge, Ram, and Maserati. FCA has increased the destination charges on its vehicles significantly within the past decade, and FCA's destination charges are higher than those of its competitors. The destination charge is listed on each vehicle's window sticker and reflects the price actually paid by the dealer to FCA. FCA's destination charges bill dealers (and, in turn, consumers) more than the actual cost of delivering the vehicles to dealerships.

Plaintiffs sued FCA alleging violations of eleven states' consumer-protection statutes[3] and common law doctrines of unjust enrichment and money had and received. In the various versions of their complaint, Plaintiffs assert that FCA's destination charge practices allow it to create the illusion that its MSRPs are competitive—thereby deceptively attracting consumers—while still selling its vehicles for overall higher prices. While acknowledging that they do not have direct contracts with FCA, Plaintiffs allege that their money (and other proposed-class members' money) directly passed through to FCA when they paid the destination charge to dealers.

---

[2] Plaintiffs initially named Stellantis N.V., a Dutch corporation, as a Defendant in this action. FCA is a subsidiary of Stellantis. Before filing their motion for leave to file a Second Amended Complaint, Plaintiffs voluntarily dismissed their claims against Stellantis without prejudice.

[3] Those states are Florida, Georgia, Illinois, Iowa, Michigan, Missouri, New York, North Carolina, Ohio, Pennsylvania, and Texas.

FCA moved to dismiss Plaintiffs' First Amended Complaint ("FAC") under Rule 12(b)(6), and the District Court granted FCA's motion without prejudice to Plaintiffs' opportunity to amend. Plaintiffs then sought leave under Rule 15 to file a Second Amended Complaint ("SAC"). The District Court denied Plaintiffs such leave because it concluded that the SAC failed to remedy the FAC's deficiencies and that any further attempts to amend would be futile. Plaintiffs timely appealed the District Court's denial of their motion to file the SAC.[4]

We will affirm the District Court's denial as a proper exercise of its discretion.

II.    DISCUSSION[5]

"The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). A district court may deny leave to amend where it is apparent from the record that "the amendment would be futile." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). An amendment is futile if the complaint, as amended, does not state a claim upon which relief can be granted. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). This is the same standard as a motion to dismiss under Rule 12(b)(6). Id. "A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was

---

[4]    Plaintiffs do not appeal the District Court's dismissal of the FAC.

[5]    We have jurisdiction to review the District Court's decision to deny leave to amend under 28 U.S.C. § 1332(d)(2) and 28 U.S.C. § 1291. "[W]e review the District Court's denial of leave to amend for abuse of discretion, and review de novo its determination that amendment would be futile." U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P., 769 F.3d 837, 849 (3d Cir. 2014).

put on notice as to the deficiencies in his complaint, but chose not to resolve them."

Schumann, 769 F.3d at 849 (internal citations and quotations omitted).

To determine whether a complaint states a claim upon which relief can be granted, we "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 678). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

A.      Failure to State Consumer Protection Claims

Plaintiffs bring claims under the eleven states' consumer protection statutes. Those statutes vary somewhat, but all require proof of a deceptive act or unfair practice and most require proof of resulting damages.[6] See, e.g., Marrache v. Bacardi U.S.A., Inc., 17 F.4th 1084, 1097 (11th Cir. 2021) (applying Florida law).

---

[6]      See, e.g., Ussery v. Goodrich Restoration, Inc., 800 S.E.2d 606, 611 (Ga. Ct. App. 2017) (applying Georgia law); McIntosh v. Walgreens Boots All., Inc., 135 N.E.3d 73, 80 (Ill. 2019) (applying Illinois law); McKee v. Isle of Capri Casinos, Inc., 864 N.W.2d 518, 532 (Iowa 2015) (applying Iowa law); Brownlow v. McCall Enters., Inc., 888 N.W.2d 295, 307 n.5 (Mich. Ct. App. 2016) (applying Michigan law); Murphy v. Stonewall Kitchen, LLC, 503 S.W.3d 308, 311 (Mo. Ct. App. 2016) (applying Missouri law); Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc., 171 N.E.3d 1192, 1197 (N.Y. 2021) (applying New York law); Duffy v. Camp, 882 S.E.2d 675, 696 (N.C. Ct. App. 2022) (applying North Carolina law); Grgat v. Giant Eagle, Inc., 135 N.E.3d 846, 851 (Ohio Ct. App. 2019) (applying Ohio law); Am. Express Bank, FSB v. Martin, 200 A.3d 87, 94–95 (Pa. Super. Ct. 2018) (applying Pennsylvania law); Doe v. Boys Clubs of Greater Dall., Inc., 907 S.W.2d 472, 478 (Tex. 1995) (applying Texas law); but see Loury v. Westside Auto. Grp., 199 N.E.3d 62, 71 (Ohio Ct. App. 2022) (In certain circumstances not applicable here, "R.C. 1345.09(B) [Ohio's Consumer Sales Practices Act] provides that where a consumer is unable to prove actual

In their proposed SAC, Plaintiffs argue that FCA's destination charge practices violate those consumer protection statutes because FCA "misrepresents" the total cost of Plaintiffs' vehicles "by omitting mandatory fees from advertised prices and misrepresenting the nature and purpose of fees." App. 233. In granting FCA's first motion to dismiss, the District Court concluded that Plaintiffs had not plausibly alleged that this pricing practice was deceptive or unfair, nor that it caused them damages. The proposed SAC similarly fails to state a claim for relief for violation of the eleven consumer protection statutes.

First, in the proposed SAC, Plaintiffs still do not plausibly allege that the destination charges were deceptive or unfair. Plaintiffs have not claimed, for example, that the destination charge they paid was higher than the amount FCA charged the dealers, allowing the dealers to make a secret profit from destination charges paid by consumers. Further, even if FCA's destination charges are higher than its competitors, Plaintiffs have failed to allege how those accurately-disclosed higher charges, published clearly on the vehicles' window stickers, are in and of themselves, deceptive or unfair. To the extent that Plaintiffs are arguing that the term "destination charge" communicates that it is an at-cost delivery fee for each individual vehicle's delivery to each specific dealership, this argument fails as Plaintiffs themselves state that the fee is understood to represent an "average" cost of delivery from manufacturer to dealer nationwide. App. 201–202. Finally, to the extent that Plaintiffs are arguing that the term "destination

damages, he or she is entitled to an alternative statutory award of $200 for a CSPA violation.").

charge" signals that it represents the cumulative cost of car deliveries with no eventual profit to the manufacturer, or that FCA had a duty to disclose such profit, we agree with the District Court that these theories generally would be unsuccessful in the eleven state jurisdictions listed.

However, even if FCA's destination charge practices were deceptive, Plaintiffs have not plausibly alleged that those practices caused Plaintiffs to suffer damages. Most critically, Plaintiffs do not state that the destination charges caused them to pay *more* than they would have otherwise paid for their vehicles. Nor could Plaintiffs make such allegations because Plaintiffs purchased or leased their vehicles from car dealers, with whom they could undertake price negotiations, rather than directly from FCA. Any number of factors could go into a dealer's pricing, and those factors could be entirely divorced from the destination charge. If Plaintiffs paid more for their vehicles than the sum of the MSRP and the actual cost incurred by FCA to ship the vehicles to the dealership, that heightened price would be attributable only to the dealers, not to FCA.

Indeed, some of the individual plaintiffs allege that they paid *less* than the sum of the MSRP and the destination charge. These plaintiffs have also not plausibly alleged damages resulting from FCA's markup of their vehicles' destination charges as they fail to state that, but for FCA's markup, negotiations with dealers would have resulted in an even steeper discount. Even if they had made such assertions, they fail to plausibly allege that FCA, not the dealer, would be responsible for that purportedly smaller discount. See, e.g., App. 180–81 (citing third-party sources, not FCA (nor dealers), as

7

advising consumers that destination charges are not generally negotiable). Plaintiffs have therefore failed to establish that FCA caused them to suffer damages.

In any case, the Plaintiffs fail to state a claim as to each of the eleven states for one or the other (or both) of the reasons listed above.

B. Failure to State Money Had and Received Claims

Plaintiffs also allege that FCA's destination charge practices violate the same eleven states' common law doctrines of money had and received. While not identical, these doctrines all require the same essential elements: Plaintiffs must establish that FCA holds money that "in equity and good conscience" belongs to Plaintiffs. See, e.g., Seals v. Major, 874 S.E.2d 423, 429 n.17 (Ga. Ct. App. 2022) (internal quotation marks omitted) (applying Georgia law).[7]

This claim fails though, because, again, Plaintiffs purchased or leased their cars from dealers, not from FCA, and thus, Plaintiffs paid no money directly to FCA. While

---

[7] See, e.g., In re Standard Jury Instructions—Cont. and Bus. Cases, 116 So. 3d 284, 332 (Fla. 2013) (applying Florida law); Seals, 874 S.E.2d at 429 n.17 (applying Georgia law); Drury v. McLean County, 433 N.E.2d 666, 670 (Ill. 1982) (applying Illinois law); Key Pontiac, Inc. v. Blue Grass Sav. Bank, 265 N.W.2d 906, 908 (Iowa 1978) (applying Iowa law); Youmans v. Charter Twp. of Bloomfield, 969 N.W.2d 570, 598 (Mich. Ct. App. 2021) (applying Michigan law); Ward v. Luck, 242 S.W.3d 473, 476 (Mo. Ct. App. 2008) (citing Invs. Title Co., Inc. v. Hammonds, 217 S.W.3d 288, 293 (Mo. 2007) (en banc)) (applying Missouri law); Lebovits v. Bassman, 992 N.Y.S.2d 316, 318 (N.Y. App. Div. 2014) (applying New York law); Cole v. Wagner, 150 S.E. 339, 340–41 (N.C. 1929) (applying North Carolina law); Hummel v. Hummel, 14 N.E.2d 923, 926 (Ohio 1938) (applying Ohio law); Hughey v. Robert Beech Assocs., 378 A.2d 425, 427 (Pa. Super. Ct. 1977) (applying Pennsylvania law); Norhill Energy LLC v. McDaniel, 517 S.W.3d 910, 917 (Tex. App. 2017) (citing Plains. Expl. & Prod. Co. v. Torch Energy Advisors Inc., 473 S.W.3d 296, 302 n.4 (Tex. 2015)) (applying Texas law).

Plaintiffs argue that dealers "remit[ted]" Plaintiffs' destination charges to FCA, Appellants' Opening Br. 9, this theory fails to plausibly allege that the destination charge, or any portion thereof, in equity and good conscience belongs to Plaintiffs. That is because Plaintiffs do not dispute the validity or fairness of the terms of their underlying lease or purchase contracts with the dealers. Accordingly, Plaintiffs fail to allege that any purported remittance of the destination charge back to manufacturers pursuant to those contracts, rightfully belongs to themselves rather than to the dealers. As Plaintiffs have failed to plausibly allege a claim for money had and received, amendment of this claim would be futile. See Lake, 232 F.3d at 373.

### C. Failure to State Unjust Enrichment Claims

Last, Plaintiffs allege that FCA's destination charges violate the same eleven states' common law doctrines of unjust enrichment. Each state's doctrine requires Plaintiffs to establish that FCA received some unfair benefit from Plaintiffs.[8]

---

[8] Duty Free World, Inc. v. Miami Perfume Junction, Inc., 253 So. 3d 689, 693 (Fla. Dist. Ct. App. 2018) (applying Florida law); St. Paul Mercury Ins. Co. v. Meeks, 508 S.E.2d 646, 648 (Ga. 1998) (applying Georgia law); HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 678–79 (Ill. 1989) (applying Illinois law); State Dept. of Hum. Servs. ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 154–55 (Iowa 2001) (applying Iowa law); Barber v. SMH (US), Inc., 509 N.W.2d 791, 796 (Mich. Ct. App. 1993) (applying Michigan law); Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010) (applying Missouri law); Greenfield v. Long Beach Imaging Holdings, LLC, 981 N.Y.S.2d 135, 137 (N.Y. App. Div. 2014) (applying New York law); Butler v. Butler, 768 S.E.2d 332, 336 (N.C. Ct. App. 2015) (applying North Carolina law); HAD Enters. v. Galloway, 948 N.E.2d 473, 477 (Ohio Ct. App. 2011) (applying Ohio law); Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct. 1995) (applying Pennsylvania law); Lee v. Lee, 411 S.W.3d 95, 111–12 (Tex. App. 2013) (applying Texas law).

Plaintiffs' unjust enrichment claim fails for the same reasons as Plaintiffs' other claims. Plaintiffs fail to plausibly allege that FCA engaged in deceptive or unfair conduct, and that FCA has been unjustly enriched as a result (again, Plaintiffs bought their cars from dealers, not from FCA directly). Thus, FCA has not accepted any unjust benefit from Plaintiffs.

D. Denial of Leave to Amend was a Proper Exercise of Discretion

The District Court dismissed the FAC based upon the pleading deficiencies above. Despite being "on notice as to the[se] deficiencies," Schumann, 769 F.3d at 849 (quoting Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 144 (3d Cir. 2002)), Plaintiffs failed to address them in their proposed SAC and, like the FAC, the SAC fails to state a claim upon which relief can be granted.

III. CONCLUSION

As the District Court's denial of Plaintiffs' motion for leave to amend was a proper exercise of discretion, we will affirm.